530 A.2d 436

**John P. KAROLY, Jr.**

v.

**Joseph E. CAP, Appellant.**

Superior Court of Pennsylvania.

Submitted April 13, 1987.

Filed Aug. 21, 1987.

Joseph E. Cap, in propria persona.

Norman E. Blatt, Jr., Allentown, for appellee.

Before KELLY, POPOVICH and WATKINS, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Lehigh County granting the plaintiff's (John P. Karoly, Jr.'s) preliminary objections to the defendant's (Joseph E. Cap's) New Matter. We affirm in part, quash in part and modify.

The genesis of the present appeal is a Complaint in Assumpsit filed on June 29, 1983, by the plaintiff to recoup monies claimed due and owing for legal services rendered on behalf of the defendant.

Preliminary objections were filed by the defendant and were responded to in the form of an Answer by the plaintiff. In the ensuing three years preceding the defendant's appeal to this Court, the record discloses a veritable onslaught of motions, petitions, orders and various other pleadings relating to the instant case (totalling some 29 in number) that appear to have done nothing more than protract this suit and accomplished little in the way of justice in the process.[1]

The document which we need to concern ourselves with is the defendant's Answer, filed at the direction of the court below once his preliminary objections to the plaintiff's Complaint were dismissed by order and accompanying opinion dated September 5, 1984.

The Answer filed by the defendant admitted entering into an oral agreement with the plaintiff for legal services, but he asserted the amount agreed upon and already paid for the services performed came to $350.00 and not the $1,030.00 plus 1.5% monthly interest claimed due by the plaintiff.

In the New Matter portion of the defendant's Answer, he claimed that the plaintiff's negligent performance of his services constituted a breach of their agreement and foreclosed the defendant from supposedly recovering damages in excess of $10,000.00 from the individuals who instituted suit against him and against which the plaintiff was hired to defend.

The defendant also alleged that the plaintiff's commencement of suit at the district justice level to have his vehicles

1. We in no way wish to point the accusatory finger of delay at the court below or the plaintiff, both of whom appear to have made every effort to accommodate the seeming endless cascade of petitions, motions and exceptions submitted by the defendant pro se (some of them unheard of in the law) in his efforts to forestall completion of this lawsuit.

levied upon, the execution sale of which was prevented by the defendant's appeal to Common Pleas Court and the subsequent invalidation of the levy issued, entitled him to reimbursement of costs ($44.00), payment for his services in defending the suit ($1,562.00) and exemplary damages (in excess of $10,000.00).

By way of further answer, the defendant counterclaimed that the notice of sale of his property (affixed to his residence and published in the local newspapers) was wrongful and malicious because: 1) fraudulent statements were purportedly made in the writ of execution secured by the plaintiff; 2) the notice of sale was without right or legal authority because a writ of certiorari issued by Common Pleas Court supposedly acted as a supersedeas; and 3) the publication of the sale caused the defendant "great mental pain and humiliation and ... tended to expose[ ] him to public contempt and ridicule and ... caused an unfavorable opinion of him to be formed in the minds of the public, all of which [was] the direct, proximate and natural result of the wrongful acts of the plaintiffs [sic] ...."

For this asserted "reckless, wanton, irresponsible, wilful and malicious" conduct attributed to the plaintiff, the defendant asked for punitive damages in excess of $10,000.00.

Preliminary objections were filed by the plaintiff and sought, initially, a motion to strike for improper joinder of Peter Karoly, Karoly Law Offices and Karoly and Karoly, P.C. under the counterclaim portion of the defendant's New Matter for the defendant's failure to first seek leave of court to do so, and, in any event, joinder was asserted to be untimely.

Secondly, a motion for a specific pleading was sought as to the defendant's negligence contention. Thirdly, a demurrer to the allegation of abuse of process/malicious prosecution was made on the basis that, inasmuch as the defendant's claim appeared to be premised upon the writ of certiorari staying all proceedings, the Lehigh Local Rule of Court No. 550(b)(3) requiring a bond to be posted was not

complied with, and, thus, no supersedeas attached to preclude the case from progressing.

Lastly, a motion to strike the "fraudulent" claim of the defendant was asserted because he failed to allege with particularity the factual predicate for the claims as required by Pa.R.Civ.P. 1019(b).

In response to the plaintiff's preliminary objections, the defendant filed an Answer—this is not foreign to the Pennsylvania Rules of Civil Procedure (e.g., Rule 1017(a)). Thereafter, several documents were presented by the defendant, i.e., Application For Continuance, Petition For The Recusal Of A Judge [Hon. James N. Diefenderfer] and Reply To Petition Seeking Counsel Fees—the defendant's litigious behavior caused the plaintiff to seek counsel fees in the amount of $410.00 for having to respond to and appear at the various arguments held on the motions, petitions and exceptions filed by the defendant. No disposition seems to have been made as to the request for counsel fees by the plaintiff.

By order dated May 29, 1986, the plaintiff's preliminary objections (which included motions to strike and for improper joinder, motions for a more specific pleading and a demurrer) were granted and the defendant's New Matter was dismissed. Nowhere in the order is there any mention that the defendant was granted leave to amend his New Matter. Defendant thereupon brought this appeal.

At the threshold of our consideration of this appeal we must determine whether and to what extent the order at issue is appealable. *Hudock v. Donegal Mutual Insurance Co.*, 438 Pa. 272, 264 A.2d 668 (1970).

In assessing whether an order sustaining preliminary objections (be they lodged by a plaintiff, a defendant or an additional party) is final, the standard remains the same and, we believe, is governed by *Hudock*, supra. There the Court wrote:

As a general rule, an order which sustains preliminary objections in the nature of a demurrer without dismissing the complaint or entering judgment or otherwise termi-

nating the action between the parties is interlocutory and, therefore, lacks the requisite finality to be an appealable order. Where, however, the order does, in effect, terminate the action between the parties, or so restricts the pleader with respect to further amendment of his complaint as virtually to put him out of court on the cause of action he seeks to litigate, it is a definitive and final order and, thus, appealable.

438 Pa. at 276, 264 A.2d at 671 (Citations omitted). Accord *Olivieri v. Olivieri*, 242 Pa.Super. 457, 364 A.2d 361 (1976) (Appealability of order granting preliminary objections to the appellant's answer, new matter and counterclaim governed by *Hudock*).

The order of the court below, while granting the plaintiff's preliminary objections to the defendant's New Matter, had the effect of sustaining various motions (i.e., to strike, to strike for improper joinder, for a more specific pleading and a demurrer) of the plaintiff. As such, of necessity, we will look to the substance of the preliminary objections and the content of the New Matter in tandem to determine the appealability of the order in question. See, e.g., *Hudock*, supra; *Olivieri*, supra.

■ Initially, we observe that the defendant's Answer to the Complaint had altered the caption to add "Peter Karoly, Karoly Law Offices, Karoly & Karoly, P.C." as party-plaintiffs.

In New Matter paragraphs 8–10, the defendant charged the plaintiffs with a breach of the agreement referred to in the Complaint and negligence in failing to recover $10,-000.00 (supposedly by counter-suing) from those litigants the plaintiffs had been hired by the defendant to defend him against. And, as a result of the plaintiffs' alleged conduct, the defendant was seeking in excess of $10,000.00 for actual damages and an equal amount for punitive damages.

The plaintiff's response came in the form of preliminary objections, which, substantively, were in the nature of a motion to strike for improper joinder of "Peter Karoly,

Karoly Law Offices, and Karoly & Karoly, P.C." as involuntary plaintiffs.

We have stated on this subject that the granting of a party's preliminary objections in the "nature of a motion to strike" and dismissing an appellant's praecipe for joinder is always final and appealable. *Jonas v. Wiesmeth Construction Co.*, 360 Pa.Super. 173, 520 A.2d 40 (1987); *McCelland v. Devine*, 315 Pa.Super. 363, 461 A.2d 1322 (1983) (Order denying a defendants' petition to join an involuntary plaintiff addressed); *Kelly v. Carborundum Co.*, 307 Pa.Super. 361, 453 A.2d 624 (1982) (semble).

In responding to the plaintiff's argument that the defendant acted untimely and without leave of court, thus believing his motion was properly granted, we first need to examine the facts: The record discloses that from the moment the Complaint was filed on June 29, 1983, the defendant inundated the court below with no less than 16 documents ranging from preliminary objections, exceptions, replies and petitions seeking stays, the latter of which resulted in an order of court (dated October 2, 1984) denying the defendant's petition to stay proceedings so he would have to file an Answer within 20 days thereof. His Answer was submitted on October 16, 1984.

The exact two claims raised by the plaintiff here were found wanting in *Jonas,* supra, wherein the appellant had not only filed his praecipe for joinder beyond the 60 days permitted for such an action by Pa.R.Civ.P. 2253, but it had not sought leave of court to enter it. In reversing the order of the court denying the appellant's efforts to join a party to the suit, this Court wrote:

Our Supreme Court in *Graham v. Greater Latrobe School District*, 436 Pa. 440, 260 A.2d 731 (1970) carved out an exception to the time period in which an additional defendant may be joined as prescribed by Pa.R.C.P. 2253.

There the court propounded:

Rule 2253 does not explicitly cover the situation of the joinder of additional defendants when the original defendant has filed preliminary objections to the com-

plaint. If the objections are sustained, no problem will arise, however, for either the action will be dismissed or an amended complaint will be filed after which a sixty day period begins. When the objections are overruled, as here, reason and policy require that the defendant be given sixty days to join additional defendants. Preliminary objections attack the validity of the pleading, and until those objections are overruled, a court has not determined that the plaintiff has filed a valid complaint. Applying that reasoning to time periods (1) and (2), the most reasonable construction of Rule 2253 would be that the defendant has sixty days from the time it is determined that plaintiff has filed a valid complaint. If no preliminary objections are filed, that will be the date of the filing of the complaint. If they are filed, that will be the date they are overruled. Also, it makes no sense to require the defendant to proceed as if the action will continue when he has before the court objections which, if successful, will terminate the litigation. No reasons of policy require that he follow these inconsistent paths at the same time.

*Id.*, 436 Pa. at 443–44, 260 A.2d at 733.

The court's holding in *Graham* has been followed in other cases where a complaint was filed, and the original defendant filed preliminary objections which would terminate the litigation if granted. *See, Commercial Banking Corporation* [*v. Culp*, 297 Pa.Super. 344, 443 A.2d 1154 (1982) ].

The instant appeal is exactly on point with the cases we cite as precedent. Appellant was served with a complaint by Delaware Township to which it responded by filing preliminary objections in the nature of a demurrer. The sixty day period for joining an additional party was tolled and did not start to run until December 27, 1984 when the lower court issued its order denying the objections. Appellants filed a praecipe to join Pocono on January 25, 1985 well within the sixty day period. We see no reason to deviate from the holdings of *Graham* and *Commercial Banking Corporation, supra.*

360 Pa.Super. at 178–179, 520 A.2d at 42–43 (Footnote omitted).

Instantly, as in *Jonas,* Rule 2253's 60–day time period was stayed pending the determination of the defendant's numerous pre-trial petitions and exceptions. The defendant filed his Answer, with additional plaintiffs listed thereon and which we find to have been a proper joinder even though no praecipe seeking joinder was filed,[2] within 14 days after his petition (seeking to stay his having to file an Answer) was denied.

Furthermore, we would observe that the plaintiff's contention, in subparagraph b of point 4 of his motion to strike for improper joinder, that the defendant should have joined the other named plaintiffs as "additional defendants" is not persuasive under the facts at bar.

For example, the court below at footnote 3 of its order wrote that the defendant's averments in New Matter were mere "subterfuge", and, this, of necessity, discounted the remedial effects an amendment (be it in the context of a pleading or joinder of parties by a different procedural method—i.e., Pa.R.Civ.P. 2252) could have had in potentially reversing the court's position regarding its dismissal of defendant's joinder efforts. See *Unger v. Township of Hampton,* 437 Pa. 399, 263 A.2d 385 (1970).[3] This is reinforced by the fact that the court below could have added the additional plaintiffs on its own motion under

**2.** "[A]lthough cases on this subject are few and hoary, it appears that nothing need be done save include the involuntary plaintiffs on the caption of the complaint." *Onorato v. Wissahickon Park, Inc.,* 430 Pa. 416, 420, 244 A.2d 22, 24 (1968); 7 Goodrich-Amram 2d, § 2226(b):6 at 400 (1977). Defendant did so here with his inclusion of the added plaintiffs in the caption of his Answer.

**3.** In *Unger's* footnote 1, discussion was had as to the trial court's comments in its opinion to the appellate court that "no amendment would cure the defect of the complaint" rendering the granting of appellee's preliminary objections to the appellant's complaint appealable even though leave to amend was also granted to the appellant. The point to be made is that an order is made appealable despite the fact that an opportunity to amend is afforded to the appealing party where it is too restrictive as, virtually, to put him out of court on the cause of action which he seeks to litigate. *Sullivan v. City and County of Philadelphia,* 378 Pa. 648, 107 A.2d 854 (1954).

Pa.R.Civ.P. 2232(c), if it had believed that they were "necessary" parties to the lawsuit, but it chose not to do so. See 7 Goodrich-Amram 2d, § 2232(c):1, 1.1 (1977).

■ Although we conclude that the portion of the order dismissing the defendant's New Matter on a misjoinder ground is final (see *Jonas,* supra; *McCelland,* supra; *Kelly,* supra), we, nonetheless, find that the joinder of the additional plaintiffs as involuntary plaintiffs was improper.

Pa.R.Civ.P. 2227 controls those instances in which a party may be joined as an involuntary plaintiff:

(a) Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.

(b) If a person who must be joined as a plaintiff refuses to join, he shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Rule 2227 condones compulsory joinder "only where the substantive law provides that an interest is joint and the holder of such interest refuses to join. Involuntary joinder is necessary because without such joinder an indispensable party is missing and the action cannot proceed." *Kelly,* supra, 307 Pa.Super. at 369, 453 A.2d at 628.

As has been the law in Pennsylvania for some time now, "the requirement of joinder of all having a joint interest" is required. *Onorato,* supra, 430 Pa. at 421, 244 A.2d at 24–25. Thus, the joinder issue reduces itself to whether, in the language of Rule 2227(b), the "substantive law permits such involuntary joinder" in the case before us.

What this Court has stated in the context of an employer-employee relationship is applicable here; to-wit:

An employer is not an indispensable party to his employee's action in trespass against a third party tortfeasor. The interests of the employee and employer are not joint. The employee's cause of action is independent

of the employer and can be pursued without the latter's joinder.

*Kelly,* supra, 307 Pa.Super. at 369, 453 A.2d at 628.

Sub judice, the plaintiff's cause of action is premised upon an alleged breach of contract by the defendant for legal services rendered on his behalf *by the plaintiff.* See Complaint at Record A–1 and Exhibit "A" attached thereto. Ergo, the plaintiff's cause of action is independent of the additional plaintiffs and can be pursued without the latter's joinder.  Id.

Involuntary joinder of the additional plaintiffs is not necessary to a determination of the plaintiff's cause of action against the defendant; and the action of the plaintiff can proceed forward.  Also, joinder of the additional plaintiffs for the purpose of determining fault, if any, is also improper substantively since it is a matter which can more properly be dealt with under the heading of "counterclaim" by the defendant in seeking to redress his complaints.  See Pa.R.Civ.P. 2252; *United National Insurance Co. v. M. London, Inc.,* 337 Pa.Super. 526, 487 A.2d 385 (1985); *Olivieri,* supra; see also *Duquesne Light Co. v. U.S. Industrial Fabricators,* 334 Pa.Super. 444, 483 A.2d 534 (1984).

Rule 2227, interpreted in light of the law, does not appear to have been intended as a spearhead for a *defendant's recovery of damages* against those joined as involuntary plaintiffs.  For example, in *Kelly,* supra, a defendant's attempted joinder of an employer as an involuntary plaintiff in a suit instituted by the employee was done so to insulate the defendant from liability or apportion responsibility between the employer and the defendant for the resultant injury to the employee because of a defective product. Neither was successful because of the barring effect of the Workmen's Compensation Act.

Likewise, in *McCelland,* supra, the defendant sought to join the plaintiff's employer as an involuntary plaintiff for the purpose of holding the employer, vis-a-vis the defendant, accountable for the plaintiff's injuries on negligence grounds.

Therefore, we read Rule 2227 to apply only when the right or liability of the parties is solely joint. This has been stated to mean that "[i]f the right of the claimants is solely joint they must all join as plaintiffs. If the liability of the defending parties is solely joint they must all be joined as defendants." 7 Goodrich-Amram 2d, § 2227(a):1 at 382 (1977). And, the nature of the claim will determine whether the liability is joint or several. Id. at § 2227(a):2 at 388.

Instantly, the nature of the defendant's claim ("negligence"/malpractice) does not relate to a "right" of the claimant/plaintiff. Rather, it is directed at the alleged "liability" of the involuntary plaintiffs to the defendant. This joinder for "liability" purposes would seem to be proper if it were for the reduction or elimination of accountability of the defendant to the complainant/plaintiff. See *Kelly,* supra; *McCelland,* supra; cf. 7 Goodrich-Amram 2d, § 2227(a):2 at 388 n. 46, citing *Snider v. McKean,* 36 Pa.D. & . C.2d 203 (1964). Thus, the defendant's use of Rule 2227 as an instrument by which to recoup damages is inconsistent with our reading of the law on the matter. See 7 Goodrich-Amram 2d, § 2227(a):1 et seq. (1977).

As stated previously, the defendant's objective can be achieved by utilization of Rule 2252 to hold the additional plaintiffs responsible to the defendant, and we see no reason to distort the intended purpose of Rule 2227 to achieve an end not contemplated by the law, i.e., as a means to recover damages. The defendant's claim under the guise of involuntary joinder of the plaintiffs is, therefore, not cognizable through the use of Rule 2227(b).

■ To the extent that the court's order of May 29, 1986, granted the plaintiff's motion for a more specific pleading of the defendant's New Matter at paragraphs 8–10, we find it to be interlocutory. See generally *Local No. 163, International Union of United Brewery, etc. v. Watkins,* 417 Pa. 120, 207 A.2d 776 (1965).

At first blush, this would appear to be inconsistent with the indicators which, at least superficially, point to the

order being labelled final. For instance, the most salient fact is the court below "dismissing" the defendant's New Matter and, in effect, precluding the defendant from having the opportunity to amend that portion of his New Matter to plead an "affirmative" defense to the allegations proffered in the plaintiff's Complaint. See *Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 246 A.2d 353 (1968); *Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Co.,* 419 Pa. 170, 213 A.2d 366 (1965); *Sullivan v. City and County of Philadelphia,* 378 Pa. 648, 107 A.2d 854 (1954) and compare with *Posternack v. American Casualty Company of Reading,* 421 Pa. 21, 218 A.2d 350 (1966); *Central Contracting Co. v. C.E. Youngdahl & Co.,* 418 Pa. 122, 209 A.2d 810 (1965); *Pellegrine v. The Home Insurance Co.,* 200 Pa.Super. 48, 186 A.2d 662 (1962); *Higgs v. New York Fire Insurance Co.,* 176 Pa.Super. 310, 106 A.2d 860 (1954).

However, the twist in the case comes in the content of the defendant's New Matter, i.e., he makes allegations of negligence/malpractice directed at the plaintiffs. This is totally at odds with the plaintiff's breach of contract claim and is foreign to the pleading permitted under Pa.R.Civ.P. 1030.

Rule 1030 requires the filing of "affirmative" defenses by the defendant under New Matter to the plaintiff's statement of claim in his Complaint. This means that the defendant "seeks no relief from the plaintiff except the denial of the plaintiff's claim. No judgment in favor of the defendant is sought." 2 Goodrich-Amram 2d, § 1030:3 at 300 (1976). In other words, New Matter is to consist of allegations of fact extrinsic of those averred in the statement of claim (see *Kine v. Forman,* 404 Pa. 301, 172 A.2d 164 (1961)) and is "in the nature of the common-law plea of confession and avoidance." 2 Goodrich-Amram 2d, § 1030:1 at 283 (1976). Anything else pleaded in New Matter would be considered a traverse, set-off or counterclaim, and not a true "affirmative" defense as that phrase has come to mean in the realm of pleading in Pennsylvania. *Kine,* supra.

The procedure by which errors of form or substance in the defendant's New Matter can be raised by the plaintiff has been held to be "in the same manner as in the case of

the simple answer without new matter." 2 Goodrich-Amram 2d, §§ 1030:3, 1037(c):2 (1976). This permits the plaintiff, at his option, to file preliminary objections in the nature of a motion for a more specific pleading, which he did here. See id. at § 1025:3; Pa.R.Civ.P. 1017(b)(3).

Thus, the court below properly ruled on the plaintiff's motion for a more specific pleading as to paragraphs 8–10 of the defendant's New Matter by dismissing it. Although not articulated by the court below as to the reason therefore, we deem the order supportable for the defendant's failure to comply with the dictates of Rule 1030, which requires the assertion of "affirmative" defenses only in New Matter. This the defendant did not do and renders the order interlocutory and not final because the defendant is not "out of court". As stated by our Supreme Court in *Ventura*, supra, 431 Pa. at 463, 246 A.2d at 355:

> An order does not put "a party out of court" unless it precludes proof of facts at trial, which is determined in favor of the pleader would provide him with a complete defense to the action. *Adcox v. Pa. 'Mfgrs' Assn. Cas. Ins. Co.,* supra.

Such is not the case here. The facts pleaded in the defendant's New Matter at paragraphs 8–10 are not "affirmative" defenses so as to provide the defendant with a complete defense if presented at trial on the breach of contract claim of the plaintiff. On the contrary, the facts averred therein portray an independent cause of action against the plaintiffs for negligence/malpractice for which the defendant seeks damages.

Accordingly, we rule that segment of the lower court's order granting the plaintiff's motion for a more specific pleading and the dismissing of the defendant's New Matter at paragraphs 8–10 to be interlocutory.[4]

■ Lastly, in our assessment of the defendant's New Matter (under the heading of "counterclaim") at paragraphs 12–32 alleging a cause of malicious use of process or

4. As an aside, we would note that the defendant's bald allegation of "fraud" on the part of the plaintiffs in paragraph 11 of New Matter is

malicious prosecution, we find that aspect of the lower court's order granting the plaintiff's preliminary objections in the nature of a demurrer and dismissing the defendant's counterclaim to be final and properly before us. See *Broido v. Kinneman,* 375 Pa. 568, 101 A.2d 647 (1954); *United National Insurance Co.,* supra; 2 Goodrich-Amram 2d, § 1031(a):4 at 321 (1976).

■ In making our determination as to the propriety of the lower court's order, we begin by examining Pa.R.Civ.P. 1031. It reads:

### Rule 1032.  Counterclaim

(a) The defendant may set forth in the answer under the heading "Counterclaim" any cause of action or setoff which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, or (2) which arises from contract or is quasi-contractual.

(b) A counterclaim need not diminish or defeat the relief demanded by the plaintiff.  It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff.

Under Rule 1031 [5] a defendant may set forth any number of counterclaims which he has against a plaintiff, provided, of course, that "the matter arise[s] from the same transaction or occurrence, or series of transactions or occurrences from which the plaintiff's cause of action arose." *United*

lacking in specificity under Pa.R.Civ.P. 1019(b).  In addition, it is not an "affirmative" defense, given the factual allegations made in the Complaint of breach of an agreement, so as to place the defendant "out of court" with the affirmance of the lower court's order granting the plaintiff's motion to strike on this aspect of the defendant's New Matter.  Compare *Higgs v. New York Fire Insurance Co.,* 176 Pa.Super. 310, 106 A.2d 860 (1954).

5.  Rule 1031 was amended to afford a defendant the opportunity to include in his Answer under the heading of "counterclaim" any cause of action asserted in assumpsit or trespass which he has against the plaintiff at the time of filing the Answer.  The amendment became effective July 1, 1984.  However, "procedural rule amendments do not apply to actions at law instituted prior to the effective date of the amendment; procedural rights are determined by the law in force

*National Insurance Co.,* supra, 337 Pa.Super. at 542, 487 A.2d at 393.

With the preceding in mind, the record indicates that the plaintiff's Complaint asserted, in relevant part, that the defendant breached an oral agreement for payment of legal services performed (both civil and criminal) on behalf of the defendant "stemming from the Defendant's dealings with Valley Stamp and Coin, Inc., and/or Bruce Mayer." (Paragraph 4)

The defendant counterclaimed with averments of malicious use of process or malicious prosecution concerning the plaintiff's institution of a suit before a district justice in an attempt to recoup monies allegedly due him.

Further, the manner and method by which the suit was commenced and the attempted execution of the order entered by the district justice were assailed as being done in bad faith, maliciously and without probable cause.

It is beyond cavil that the abuse of process counterclaim might not have surfaced had there been no contractual relations between the defendant and the plaintiff. However, the contentions of the defendant go "only to the circumstances surrounding the manner in which [the plaintiff's] claim[ ] in assumpsit w[as] asserted, and the motives of [the plaintiff] in bringing suit." *Zivitz v. Centennial Road Properties, Inc.,* 328 Pa.Super. 79, 81, 476 A.2d 462, 464 (1984).

Thus, the counterclaim neither arises out of the tortious acts of the plaintiff in the very transaction upon which he is suing, nor is it directly connected with the performance of the contract. Id. Stated differently, the defendant's cause of action for malicious use of process or malicious prosecu-

when the action is initiated." *Trinity Area School District v. Dickson,* 223 Pa.Super. 546, 551, 302 A.2d 481, 484 (1973).

Since the action at bar was commenced on June 29, 1983 by the filing of the Complaint by the plaintiff, the defendant's Answer, albeit filed (October 16, 1984) after the effective date of the 1984 amendments to Rule 1031, the assessment of the defendant's counterclaim comes within the ambit of the pre–1984 amendment to Rule 1031. See *Duquesne Light Co. v. U.S. Industrial Fabricators, Inc.,* 334 Pa.Super. 444, 483 A.2d 534 (1984).

tion is separate and distinct from the plaintiff's cause of action alleging breach of contract. Any relationship between the separate causes of action is too remote and tenuous to allow the defendant's cause of action against the plaintiff to be litigated in the plaintiff's assumpsit action against the defendant. See *Township of Upper Makefield v. Benjamin Franklin Federal Savings & Loan Association*, 271 Pa.Super. 399, 413 A.2d 726 (1979).

Therefore, the court below properly dismissed the defendant's counterclaim under New Matter.

When it dismissed the counterclaim, however, the court implied a final determination of the defendant's cause of action against the plaintiff. This was not warranted by the pleadings. *Id.; United National Insurance Co.*, supra. Final adjudication of the cause of action asserted by the defendant against the plaintiff must await separate proceedings in which the plaintiff's liability to the defendant, if any, can be fully litigated. This portion of the order, therefore, will be stricken. See *Township of Upper Makefield*, supra; *United National Insurance Co.*, supra.

Order affirmed in part, quashed in part and case remanded for proceedings not inconsistent with this opinion. Jurisdiction is not retained.

KELLY, J., concurs in the result.